1731.5 Eclipse Resources v. Scott Madzia, XTL-NC, O-R-N-N-I-C, 15 minutes per side, Mr. Cochran, for your comments. May it please the Court. My name is Jeff Cochran. I'm here on behalf of the appellant, Scott Madzia, and I'd like to reserve four minutes for rebuttal. Your Honors, there are three legal issues in this appeal, but there's one primary issue before the Court, and that's whether the Eclipse entities, based on their agreements with Mr. Madzia, were entitled to drill the John Mills West wells from the well pad on Mr. Madzia's property. Just to give you some context, there are seven wells on the well pad on Mr. Madzia's property. Five of those wells are referred to as the Madzi wells because they're in the Madzi drilling unit. They go off in a southeast direction. Two of those wells are referred to as the John Mills West wells. Those go off in a northeast direction, and it's those John Mills West wells that are at issue in this appeal. So the primary purpose of contract interpretation… But they're all – the surface penetration is all on Madzia's property. That's correct, Your Honor. So the purpose of contract interpretation is to discern the intent of the parties, and in his counterclaim, Mr. Madzia included allegations that demonstrated that both he and the Eclipse entities understood that the subsurface easement between the parties prevented the Eclipse entities from drilling the John Mills West wells from the well pad on Mr. Madzia's property. Yet the trial court, in ruling on a motion to dismiss, determined that the preexisting lease and amendment between the parties permitted the Eclipse entities to drill the John Mills West wells and that the subsurface easement didn't change that right. The trial court erred in failing to give proper weight to the subsurface easement. So in relevant part, the subsurface easement grants the Eclipse entities the right to drill a well bore or well bores across, through, or under Mr. Madzia's property as to all depths and all formations. But the final executed subsurface easement agreement contained a critical limitation that was not present in the original draft of the document. Specifically, the subsurface easement limitation stated that the Eclipse entities' rights can only be used in conjunction with drilling on the Madzia wells and for no other purposes or purposes whatsoever. So the plain language of the subsurface easement agreement prohibits the Eclipse entities from drilling any wells other than the Madzia wells. To date, the Eclipse entities have been unable to provide a consistent explanation for what the subsurface easement limitation was supposed to limit or was supposed to prevent them from doing. And they've also been unable to provide an explanation for why they came back and provided a separate subsurface easement in order to drill the John Mills West wells. Mr. Let me ask you, as far as the original lease and amendment, is it your client's position that that did not give Eclipse the right to drill for the JMW wells? Or if that were all we were looking at, would that give them the right to drill? So that's a good question. I think with the benefit of hindsight, the way that the law has come out on this issue, a conventional lease predating the oil and gas boom in Ohio probably would have given the Eclipse entities the right to drill the John Mills West wells. If Mr. Madzia's property was in the John Mills West unit. But the issue was it wasn't clear at the time. And that's why they got this subsurface easement. Well, you say it's not clear. But if we're talking about the same language where you have the rights to drill, produce, collect, store, right to transport from across and through the lands, there's no subdivision of the Madzia property there, is there? That's correct, Your Honor. There's no separation between the strata. But that's why the Eclipse entities were looking to clarify. There's no separation either way, either vertically or horizontally. That's correct. The lease covers the entire 128 acres, right? That's correct, Your Honor. And so I think the issue was at the time there had been landowners who had been disputing whether that's correct or not, whether a conventional oil and gas lease that predated the deep well drilling revolution would have covered the deep wells. And so Eclipse entity actually had – they had other amendments where they had included a specific subsurface easement to allow them to do deep wells to be very specific, like this subsurface easement says it's to all depths and all formations. And so they were trying to clarify what their rights were. But in order to clarify the rights, Mr. Madzai says, I'm going to include this limitation here that says you can only use this for Madzai's wells. So part of the reason the Eclipse entities have been able to give a consistent explanation for the subsurface easement limitation is that they've given inconsistent explanations as to what the subsurface easement was even for in the first place. And their first – I thought it was for allowing Eclipse to permit other people to drill through the property, the easement. No. Well, actually, their position for the purposes of the appeal is that it allows back drilling, which is the idea that it would – drilling would start on Mr. Madzai's property. It would go off Mr. Madzai's property and come back on. Their position was that that's what the purpose of the subsurface easement was. There are a couple problems with that explanation, and one of the biggest ones is that it's – there's nothing in the subsurface easement that references back drilling. It's just general. The other issue is that their support for this comes from evidence that's outside the record. They had affidavits that they had submitted later in the case, not in connection with the motion to dismiss, that they claimed supported this back drilling interpretation. So the other issue is this was disposed of on a motion to dismiss. So Judge Frost refused to consider Mr. Madzai's extrinsic evidence in interpreting the subsurface easement. He said we can't consider extrinsic evidence, for example, the fact that Mr. Madzai specifically included a provision that prevented them from – that he added the subsurface easement limitation. And the court wouldn't consider the John Mills West subsurface easement because it was extrinsic. Yet according to the Eclipse entities, Judge Frost permissively considered this back drilling evidence, which was outside the record. So as I mentioned, Eclipse has actually provided multiple interpretations. Their original interpretation and explanation for the subsurface easement was that it was entirely unnecessary. Their first motion to dismiss in this case said four times that it was an unnecessary agreement, it was duplicative of the lease and amendment, and it was just effectively a mistake. Well, then they came and then they changed their explanation of the back drilling. As I mentioned, the back drilling explanation has some serious issues. Well, but if we blow off or don't agree with the back drilling, et cetera, explanation, we're left with the original lease, which at least as we discussed, some of us seems to permit them to do everything they want to do. Then they bring this subsurface easement and in effect by trying to have both a belt and suspenders, you argue that they have undermined or abrogated their original pants. The question to me is, what is there in the subsurface easement that vitiates, that says that it vitiates? In other words, to take an example, if I already have the right to buy all of the cars on your lot, and then we enter into another agreement that allows me to buy a 1985 Cadillac and no other car, that doesn't abrogate the original contract, does it? No, I'm not sure about that instance, Your Honor, but there is an integration clause. I think I have another example that demonstrates what seeking clarity can be a good thing. Let's say Mr. Kitter, my co-counsel. The phrase in the subsurface easement, this grant contains all of the agreements between the parties with respect to the subject matter hereof, right? Correct, that's the integration clause, Your Honor. Which says then nothing has been done that modifies the terms of this agreement. Correct. Which doesn't say that this abrogates all previous agreements between the parties, which is kind of what you would ideally want if that's what you were, if you, from Mr. Madzia's point of view, if you're clarifying that, you would think Madzia's lawyer would want something like that in there. Well, that's true, Your Honor. It could have been drafted differently, but it is related to the same subject matter, and that's why it's important, because there's no question that the lease and amendment related to the issue of drilling. And so what Eclipse essentially did is they paid a price for clarification, and I'll give you an example. Let's say Mr. Kidder, my co-counsel here, wanted to park his cars on my property, and his original agreement just said he could park motor vehicles there, and he comes back later and he decides he wants to park an RV, and we're not sure whether that's really a motor vehicle or not, but instead of fighting about it, he just enters into agreement and says he can park an RV there, but he can't use the property for any other purposes or purposes whatsoever. Well, he's paid a price for clarification, but he's also given up his right there. And in this particular instance, we have evidence or we have submitted the John Mills West subsurface easement that shows that that's what they thought the agreement did. That's what they thought the subsurface easement did is it prevented them from drilling the John Mills West wells. That's why they came back and tried to offer it and tried to propose a John Mills West subsurface easement. So I know that the Court is already familiar with the facts of this case, but there are a few facts that I do want to touch on very briefly. The first is that the lease was entered into in 2006, which is before the deep well drilling revolution in Ohio. The second is that the amendment was entered into in 2013. And at the time, the Eclipse entities didn't include a subsurface easement drilling provision like they had in other amendments, so that's why they came back in 2014 and got the subsurface easement. And I think the trial court was a little concerned as to, well, why would the Eclipse entities give up the right to drill the John Mills West wells? It seems like there wouldn't be a reason for doing that. Well, Jim Lee, from your interpretation, they gave up the right to drill anything else anywhere other than for the five MADSIA unit wells. Correct. And at the time, Eclipse has taken the position that they thought Chesapeake was going to be drilling the John Mills West wells, so they didn't even think that they were going to be drilling these wells, and when they changed their mind later, they wanted to come back and change that. I think that's the issue, is that explains why they would be willing to cede for clarification the right to drill – excuse me, they'd be willing to cede the right to drill wells they didn't expect to have to drill. We've also submitted some internal communications that show the Eclipse entities, as I mentioned, understood that the subsurface easement precluded them from drilling the John Mills West wells and that they were trying to find a way around it. And Eclipse actually considered drilling the wells from a different pad site? The district judge wouldn't consider those internal communications because they're outside the four corners? Well, that's correct. The district judge was unwilling to consider any extrinsic evidence that was submitted by MADSIA because it was outside the four corners, that's correct. But as I mentioned, the Eclipse entity's position is that the district court, in ruling on a motion to dismiss, took their evidence that was in favor of their position and ultimately construed it in terms of interpreting the subsurface easement to relate to back drilling, even though that's not really what the subsurface easement talks about. I see I've run out of time, Your Honors, but I reserve four minutes for rebuttal. Thank you. May it please the Court. Steve Silverman on behalf of the Eclipse entities, the appellees in this matter. Your Honor, contrary to Mr. Madsai's assertion, Eclipse's right to drill the John Mills West wells from the MADSIA well pad is clearly granted by the oil and gas lease. Judge Boggs, you've already noted some of that language that does that, and I will quote it to be explicitly clear. The lease grants Eclipse the rights to transport oil and gas, quote, from the subject land and other lands, and quote, from, across, and through, close quote, the MADSIA property. The lease also gives Eclipse the right to, quote, possess, use, and occupy so much of said premise as is necessary and convenient to conduct its oil and gas and related activities, including the right to install structures required to produce, store, and transport oil and gas and their constituents. So those rights are clearly granted in the lease. Judge Frost, in his motion to dismiss, properly concluded that, and I quote, the plain language further grants Eclipse broad rights to take any action necessary to achieve this purpose, which includes the right to drill well bores through the surface of the MADSIA property. Because Judge Frost concluded that Eclipse's rights were clearly granted by the lease, he held that neither the easement agreement nor the reasons for which Eclipse sought that agreement could be used to create an ambiguity in the lease. In other words, the document spoke for itself within the four corners. To use Judge Frost's words, the easement agreement, quote, cannot alter the unambiguous language of the lease. But that's exactly what Mr. MADSIA is trying to do by arguing that the easement agreement somehow modifies or supplants the lease. This is not the case because the easement agreement does not indicate a clear intent of the parties to do so. Again, in his motion to dismiss, Judge Frost cited the Columbia gas transmission case, a case decided by the Northern District of Ohio, affirmed by this court, with facts extremely similar to those of this case. And in that case, the court said, a modification cannot be presumed. It must be clearly manifested by the action of both parties to the contract. So for the easement agreement to have modified the lease, that easement agreement must clearly and explicitly manifest the party's intention to do so. And I will submit it in no way does, Your Honor. For instance, that easement agreement doesn't even mention the lease. In this case, we have three operative documents. We have this easement agreement. We have the oil and gas lease. And we have an amendment, a third document, that amends the lease. The amendment specifically references the lease, specifically says we're modifying it. But that doesn't happen. There's not even a mention of it. What's the time frame? Does the amended lease come before or after the subsurface agreement? It comes before, Your Honor. The lease, amended lease, subsurface agreement. Yes. The most important reason why the easement doesn't modify the lease is because the two agreements are inherently different and they give inherently different rights. An oil and gas lease is a conveyance. It conveys a fee-simple, determinable interest in the lessee's mineral rights to the lessor. In this case, Mr. Madseye granted that fee-simple interest in Eclipse. Conversely, an easement is not a conveyance but rather grants far less rights. As Judge Frost noted, under the Black's Law definition, and, quote, an easement does not give the holder the right to possess, take from, improve, or sell the land. But an easement, in this context, the easement does not give the grantee, Eclipse, the right to take from the property. So it doesn't give Eclipse the right to extract those minerals. In fact, and this is critical, the easement agreement expressly distinguishes itself from the oil and gas lease's conveyance of minerals in its very language. It says, and this is page 2307 of the record where Judge Frost notes this, quote, this agreement is a subsurface easement and right-of-way only and in no way grants or conveys any part of the underlying fee-simple estate of any lands owned by grantor. In other words, this is an easement agreement and we're not conveying anything in this easement agreement. So the easement in no way can subvert or supplant the rights granted in the lease. Yeah, I mean, the troublesomeness in this regard, if any, is that then the so-called integration clause says contains all of the agreements between the parties with respect to the subject matter hereof, which at least sets us on the hunt for what is the subject matter hereof. If you had not put that into it or they had not, whoever put it into it, we'd have a little easier time because we wouldn't even have to worry about that. It's limited to the subject matter of the rights granted by the easement. Well, just hereof, so you have to... Hereof meaning the document itself, the easement agreement. So your best interpretation of that is the subject matter hereof is only this document and not any other document. Well, it does not reference any other documents, so I would agree with that, Judge. Well, I'm asking. Yes, absolutely. It is your position. It is limited to the easement agreement itself. And as to any other evidence that Mr. Madzai's counsel would like to offer here, none of that evidence is part of the record in this case. And the reason for that is because Judge Frost considered a motion to dismiss where this evidence was not before him because it wasn't part of the pleadings at that stage. Only later when Judge Marbley, who took over for Judge Frost in this case, granted leave to amend, did Mr. Madzai try to inject these additional facts. So those additional facts are not even before this court. Well, you say they're not part of the record. That is, were they not in fact lodged with the district court under Marbley? No. What happened was Judge Frost gave Mr. Madzai leave to amend his counterclaim a second time for the limited purpose of adding additional facts regarding his co-affidavit claim. In disregard of that, Mr. Madzai filed a second amended counterclaim where he reasserted all the claims that had been dismissed by Judge Frost and then added these additional facts to support him. Judge Marbley then said, time out, in response to our motion to strike. He granted that and said, that's beyond the scope of what I gave you leave to amend. You had a motion to strike, so they're physically available, but they were not before the judge. Either judge, for that matter. So none of those facts are properly before this court. So when we get to the intent or motivation of the parties for what they wanted to do with which agreement, that likewise is not before the court. This court can easily affirm this case by looking at the wording of the documents before it. The three documents, the lease, oily gas lease, the amendment thereto, and the separate and distinct easement agreement. Now I'll touch on very briefly the co-affidavit claim and the bad faith claim, Your Honor, which Mr. Madzai's counsel did not address. The co-affidavit claim is really an easy one. There are several reasons for rejecting, but I'll touch on the most important one, and that is Mr. Madzai can't argue with clean hands that Eclipse somehow violated the lease because it did not obtain a second co-affidavit. Because when he raised this issue with the ODNR, the ODNR came back and said to Eclipse, go get a second co-affidavit from Mr. Madzai. That's exactly what Eclipse did. They presented it to him, and he refused to sign it. Well, the lease specifically says that under the amendment to the lease, it requires Mr. Madzai to take such action as is necessary or convenient to carry out the provisions of the lease. So he was required to sign the second affidavit. That's what Judge Marbley found in granting the motion for summary judgment on this issue. And yet, so on one hand, he'd like to argue a breach by refusing to sign a second co-affidavit. I'm sorry, excuse me. So he should not be allowed to argue, on one hand, breaching the lease by refusing to sign on the co-affidavit and then claim that Eclipse's failure to obtain that second co-affidavit somehow harms him. And that's exactly what the district court found, that he was precluded from doing so. Lastly, on the bad faith claim, Your Honor, Mr. Madzai argues that Eclipse acted in bad faith by failing to frack or complete his wells in a timely manner. Under Ohio law, a plaintiff cannot bring a standalone claim for bad faith without an accompanying breach of contract. There's one exception to that under the Savidoff case, and that's if the contract is silent on the matter on which the bad faith claim is premised. And here that exception does not apply since the oil and gas lease speaks to this issue. It explicitly says that Eclipse, quote, may decline to drill a well or wells at any time. So subsumed within that, inherent in that provision, rather, is Eclipse's right to stop or delay in drilling a well that it has begun. Moreover, Eclipse has presented no evidence, I'm sorry, Eclipse has presented evidence to justify why it stopped drilling this well for business reasons, both because of the drop in commodity prices and because of geologic operational reasons about creating a pressure sink. But Mr. Madzai, conversely, when asked what evidence he had to support his bad faith claim, could not controvert Eclipse's business reasons and had no other evidence to support his bad faith claim other than mere supposition and conjecture. And he admits that in his deposition testimony. Based on the foregoing, Your Honor, Eclipse respectfully requests that the two decisions at issue from the district court be affirmed by this honorable court. Thank you. Thank you, counsel. Thank you. May it please the court, I'm here to very briefly explain why XTO Energy should not be here. XTO does not have a lease with Mr. Madzai. XTO does not have an interest in Mr. Madzai's property. The only reason XTO was joined in this case is because it is a party to a pooling agreement, which is in effect different lessees will combine their leases for economies of scale purposes. But more importantly, the second amended complaint, after Judge Marbley struck the claims that Mr. Madzai had attempted to assert, in addition to what the court actually gave leave to assert, did not have any claims whatsoever against XTO. And so, frankly, I don't know that there's a dispute on this, but if the court were to affirm Judge Frost's March 2016 decision, then I think it's undisputed that there are no remaining claims against XTO and that summary judgment for XTO, which Judge Marbley granted, should be summarily affirmed. And I would request that the court do the same. Thank you, Your Honors. Thank you. I'll start off very briefly discussing what XTO just said. What counsel for XTO just said is correct. The claims that we asserted in this case, we joined XTO because Eclipse said they were a necessary party. So when XTO moved for summary judgment at the end of the case, there were no claims asserted against them. So it's correct that we're not trying to appeal the summary judgment grant against them because there were no claims at the time. There are a couple of things that Mr. Silverman said that I think are important and I want to clear up. He indicated that there was no evidence before the record or in the record relating to the issue of intent. And I think there's something that's very important here that we're clear on, the John Mills West subservice easement. The easement that Eclipse came back and gave to us was part of every filing we made in this case. So it was part of the counterclaim. It was part of the amended counterclaim. It was part of the second amended counterclaim. And Mr. Silverman was just up here, and he didn't explain what that agreement meant. It's an agreement that they specifically gave to us so they could drill the John Mills West wells. And we've said it in our brief several times. They can't provide an explanation for this, and it's been part of everything. The trial court didn't provide an explanation for it either. Is stupidity a sufficient explanation? Well, I don't think so, Your Honor, because I think it reflects – Because generally malice is not necessary an explanation if stupidity is available. Sure, but I think it explains what the subservice easement limitation means because Eclipse wasn't able to explain that either. And that's something that's been before the court the whole time is what were the parties trying to prevent the Eclipse entities from doing? And they haven't provided an explanation for that. Manzai's explanation is we were trying to prevent it. Their argument, I think, is they weren't trying to prevent anything. That's why I said if you would put a limitation to an external document, it would be a stronger evidence of that. Well, I think if there is some dispute or if there's some confusion, well, that's another reason for reversal as well because this is a motion to dismiss. If there's a dispute and we need to develop more facts. But is the dispute about the meaning of the subsurface easement or as to the meaning of the lease? I mean you could have all sorts of arguments about what the subsurface easement means. But if there's no dispute that it doesn't alter the lease, then you're out of luck. Well, if the party's intended for it to alter the lease, then I think that's something that's important and that's something that we would be able to present evidence on. If it's not clear what the integration clause meant, if it's not 100 percent clear that the integration clause was intended to preempt the lease and amendment, well, then that's something that we get to go forward on. This is a motion to dismiss. Every inference is supposed to be resolved in our favor. So there are a couple other things as well. Mr. Silverman was discussing the fact that Judge Marbley struck our claims when we filed our second amendment complaint. He did not strike the factual allegations from those claims. He just struck the legal claims. And he did it under the law of the case doctrine. But ultimately, this court is supposed to look at whether the Second Amendment counterclaim states a claim because we appealed everything that was done. We appealed all the interlocutory orders. So that would include Judge Marbley's decision to strike our counterclaims based on the fact that Judge Frost had already ruled on them. And our position as we laid out in our brief is that's subject to de novo review because it's a legal issue. It's a legal issue of whether our Second Amendment counterclaim with all the additional facts in there talking about Eclipse's intent and the other amendments that they had that had subsurface easements, that's a legal issue. And that's something that should be reviewed de novo. At this time, Your Honor, I don't have anything further. Are there any further questions? There are not. Thank you, counsel. The case will be submitted.